We begin with number 22192, Chhabra v. Blinken. May it please the court, I'm Thomas Mosley, counsel for the Chhabras. The district court erred in dismissing our complaint for failure to state a claim because meaningful relief could really have been granted in this case, and I think the district court misapprehended that in this somewhat complex area. A reversal of the legal determination by the Department of Justice, a reversal in light of the Supreme Court's decision in Kawashima that Dr. Chhabra's conviction under 26 U.S.C. 7201 was a crime involving moral turpitude, a reversal of that decision would have legally and effectively opened the door for Dr. Chhabra to have applied for a waiver of the second ground of inadmissibility, the bar from having been previously deported. And this presents a situation where if that had been reversed, if the crime involving moral turpitude had been reversed, he would have, again, legally and practically had the opportunity to seek that waiver. So otherwise there would have been no point in applying for a waiver of the bar to admissibility, a waiver of the bar to admissibility for the prior deportation. That's, for example, I think illustrated in our Rule 28J submission where we submitted a decision by the Administrative Appeals Office, which had dealt with that kind of an issue where somebody was subject to a ground of inadmissibility where there was no waiver, as here for the CINT, ground of inadmissibility. And so there was no point in adjudicating a waiver, an I-212 waiver, for a bar to admissibility based upon a prior deportation. So if I understand your argument, and I think I do, it's that if we vacate the CINT designation, then 1182H2 won't trigger. So we have something that's redressable. But what do we do about Pettis and Mercouris? I'm sorry, Your Honor. The cases Pettis and Mercouris, what do we do about those? Well, those cases don't involve situations as here. Mercouris, for example, we discussed it in our brief, didn't involve a situation where someone is being barred from entry. That was a sentence enhancement case, and it really doesn't directly address the issue I submit that we're presented here. Okay, so you're saying both Pettis and Mercouris can be distinguished because they don't have the interdependence of 1182H2. Yes, exactly. Okay, so but then what do we make of Awad, then? Awad? The summary order. Your Honor, in all candor, I have to say that Awad, which is of course not presidential, was wrongly decided. Running throughout the government's argument, unfortunately, is this fundamental error. Conviction of an aggravated felony is not itself a ground of inadmissibility. It's simply not. The Supreme Court in Vartalas, for example, made clear that even though we now have since 1996 a unitary system where both inadmissibility and deportability are considered in one proceeding, still Congress has maintained these separate grounds of inadmissibility and deportability so that Awad, regrettably under those circumstances. Isn't the better argument perhaps that we distinguish Awad because they didn't find it necessary to consider the plaintiff's challenge because they had gone and made what you hold as a mistake under the felony? That's correct. But even if we had decided that we agree or disagree with your position, that they were erroneous, you're saying that this is a different situation because we are being called to address. That's correct, Your Honor. I don't think certainly here that a challenge to the CMT determination can be avoided. Okay, so if we're with you on standing, though, that's only one of the numerous hurdles. Can you tell me what you thought the DHS determination was that we're supposed to be addressing? Well, the DHS determination, which shows up in the January 2018 order from the consulate, says the DHS determined that- That wasn't really a determination, right? It was just an application of a finding that the IJs had reached, right? Would you say that- I read it as a given X, we're deciding Y, as opposed to their own independent determination. If you think it's more than that, can you explain to me what's the basis for that? Well, Your Honor, again, just turning to page 822 of the administrative record, it says that the Department of Homeland Security made the determination that the applicant was inadmissible on the basis of a crime involving moral turpitude. So I think that that determination may derive from- I mean, was there an adjudicated process? Like, was there a hearing? No, there was not an adjudicated- But it was nonetheless a decision made by the Department of Homeland Security, and it's that legal determination, that overarching, controlling legal determination, that we seek to challenge here with respect to whether or not the 7201 conviction was a crime involving moral turpitude. Well, I don't want to- Go ahead, I mean, I don't- I've got some questions, but I don't want to- Yeah, go ahead. Well, Lynn, let me just on this point then. Let's say that I am not persuaded that there was an actual determination here. Is there any way to interpret this other than that you're just, like, collaterally attacking the IJ decision, or is there some other thing there, if I don't believe that this was actually a determination? Neither the IJ decision, the original IJ decision going back many years, or the Board of Immigration Appeals, all came down before Kawashima. They all came down before Kawashima. Kawashima is a 212 case, so there was never a determination administratively or even, frankly, by this court that, given Kawashima, this was a crime involving moral turpitude. So it's more than just a collateral attack, but even if it is considered to be a collateral attack, nonetheless we have supervening authority, we submit in Kawashima, that makes it not a crime involving moral turpitude. So the remedy you're asking for is in order, directing that processing of Dr. Chhabra's immigrant visa application go forward with reasonable promptness. Wouldn't the consulate in India have to do that? I'm sorry, Judge, I just did not hear your question. The remedy you've asked for is in order, directing the processing of Dr. Chhabra's visa application that it go forward with reasonable promptness. And my question is who would do that? We can't do that. Well, no. What I'm saying is if you make a determination that he was not convicted of a crime involving moral turpitude, it goes back to the consulate. And then at that point we're able to submit effectively an application for a waiver of the bar to deportability presented by his prior, admissibility presented by his prior deportation. And is that a matter for the consul's discretion? It would be, Judge, of course it would be a matter for the consulate to consider. In other words, it would go back to the consulate. Then we would apply to USCIS for that waiver of the bar to admissibility presented by his prior deportation. Once that's done, then it would go back to the consulate. If that is granted, if that relief is granted, if that waiver is granted, it would go back to the consulate for issuance of the visa. And are all those levels of decisions discretionary? Yes, they are, Your Honor. But those are all discretionary. But with this crime involving moral turpitude bar eliminated, we would have the option, that's all we're looking for, is the option to apply for that with the opportunity, not saying it's guaranteed, but with the opportunity to get that waiver. Are those exercises of discretion judicially reviewable? They may or they may not be, Your Honor. But we're not at that stage yet. We're at the stage where we want to be able to apply. I see my time is up. You have two minutes for rebuttal. Thank you. Good morning, Your Honors. My name is Randy Nelson. I'm an assistant U.S. attorney from the Eastern District of New York. As set forth in the government's brief, there are numerous grounds on which the district court's judgment could be affirmed. Just responding to Judge Perez's question about the DHS determination and plaintiff's response, A22, which is what was being referred to, is a letter which refers to this DHS determination in the second sentence of the paragraph dealing with crimes involving moral turpitude. I'll note, however, that the next page, A23, has the December 6, 2018 letter, which is the one that is most recent and has the check marks as opposed to the January 2018 letter, A22. The December 6, 2018 letter simply talks about crimes involving moral turpitude and says that the applicant may have applied to USCIS. It doesn't include that language about the DHS determination. I will also state— Can I just ask a hypothetical? I think that there's a very real dispute about whether or not this was actually a determination. But if there were a determination, if we were to decide that this was something that DHS independently determined, would he have an APA claim here? If DHS had, in fact, made a different determination, a new determination— No, I don't want to say different, an independent determination. If they had made an independent determination— Yes. I would say he's— He would have an APA claim. I would say it was the same determination that he's already pursued. And he could argue, I guess, that they— Well, that would be, I think, no ground for them to make a determination. So maybe there's a— No, I'm trying to ask a narrow question. If we assume that there was an independent determination made by the DHS, would he have an APA claim? Because right now, the argument is that he doesn't have an APA claim because the DHS— There was no determination to be appealing. We have to go back to the BIA and the IJ opinion. Well, I would still— It would be a different case because he would be relying on some new determination, hypothetically. So he wouldn't— It would be a different case. But I would say it's still the same grounds. So, yes, maybe he comes in and says it's a different case because there was a DHS determination, which I would submit there wasn't. But I think they would still make the same arguments that it would— It's the same— The same arguments would still present, but it would be a slightly different case. I will also just note, although it's not in the record, that there is an automated visa lookout system, which consular offices are supposed to look at in terms of issuing a visa. And although it's before issuing a visa, and, again, I cannot say this to be a fact at all, but the reference to the determination possibly— and, again, I'm not saying this is definitely the case— could be a reference to the consular office having looked at the automated visa lookout system, which is something that consular offices are required to look at before issuing a visa as to whether there are grounds on which the person would not be entitled to a visa. Unless the court has additional— I've got a couple questions about Kawashima. Do you dispute that no court has considered whether or not his crime remains a CIMT after Kawashima? Do you think it's fairly litigated? I think this court hasn't considered it exactly on the terms that plaintiff seeks it to be considered. However, the plaintiff has certainly brought the Kawashima decision to this court before, both in seeking rehearing and then— and the court acknowledged that plaintiff was seeking to challenge the CIMT on the Kawashima ground and first found that Kawashima, in other cases, had not changed the legal landscape and then, in a separate decision, held that— again, recognized that plaintiff was seeking relief based on Kawashima or saying that Kawashima had rendered his conviction not a crime in moral turpitude and the court said, well, he still would be—he still has the aggravated felony conviction. He doesn't contest that. And so, what's the point? So, yes, it wasn't addressed exactly on the terms that plaintiff was seeking to be addressed. I would also argue and say in a brief that, in fact, even if Kawashima was addressed, it doesn't change the fact that he had a CIMT. It dealt with a different statute, a different situation, even though the most that plaintiff can say about Kawashima is that he said a conviction under 7201 doesn't necessarily involve fraud or deceit. Here, plaintiff's guilty plea is— But the question for me is, is the modified categorical approach what we apply here and why? And if so, why, if not, why? Well, this court has recognized a modified categorical approach where if there are two—if a statute can include more than two offenses, the court can look to see one which would be a removable offense and the other isn't. The court can look to the particular facts of the plaintiff's conviction. And here, if one—the Supreme Court in Kawashima talked about tax, you know, evading a tax, like filing a truthful tax return but maybe hiding your money as opposed to filing a fraudulent tax return, which is what plaintiff did here. So what you're saying is that there's a distinction between evasion and fraudulent payment, and even under the categorical—the modified categorical approach, he, Mr. Chopra, would still have some trouble under Kawashima. Yes, Your Honor. And unless the court has additional questions, the government restarts brief. Thank you, counsel. Thank you. Mr. Mosley, you've preserved two minutes for rebuttal. And if you don't mind addressing the distinction between assessment evasion and payment evasion. I'm sorry, Your Honor. I—would you, Your Honor, repeat the question? I just lost post to your colleague regarding assessment evasion and payment evasion. Yes, I would submit that—and certainly we argued in more detail in our brief— that the modified categorical approach would not apply here because I think both the dissent and the— under Mathis, that both the dissent and the majority opinion recognized that there were only—that there were really only three elements to the offense, and we—there may be different ways factually that the offense can be committed, but under these circumstances, the modified categorical approach would not apply because I think both the opinions in Kawashima recognize that it's a unitary defense—excuse me, offense, even though it can be—even though it can be committed by different factual scenarios. I mean, it's somewhat—and I don't think the actual facts under the categorical approach, modified or not modified, would allow you to look at the facts here, the underlying facts. That's not—the categorical approach requires that you look at the minimum conduct at issue here, and here, the statute can be violated under the minimum contact— under the minimum contacts without fraud or deceit, even though, as for example, say in the Mendez case where you had a situation where this court acknowledged that misprision can sometimes be violated by fraud. Nevertheless, under the categorical approach, the minimum conduct necessary for conviction doesn't require fraud, and that's—and that's what—that's the singular distinction that Kawashima makes, and indeed, when this case was last before the court, when this case was last before the court, it was expressly acknowledged that we don't decide whether Kawashima makes this not a crime involving moral turpitude. For those—but for those reasons, I submit that Kawashima doesn't make it a crime— does not make it a crime involving moral turpitude, and the CIMT determination ought to be reversed. Thank you both. We'll take the case under advisory. Thank you.